**No. 25-1443**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

---

RONNIE DANTE THOMAS,

*Plaintiff-Appellant*,

v.

OFFICER PIGGETT, OFFICER RAMIREZ, OFFICER
SILVERNAIL, OFFICER JENSEN, IN THEIR OFFICIAL AND
PERSONAL CAPACITIES

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of Michigan
No. 1:25-cv-20
Hon. Jane M. Beckering

**APPELLANT'S OPENING BRIEF**

Samuel Weiss
Rights Behind Bars
1800 M St. NW Front 1, #33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant
Ronnie Thomas*

On the brief: Asha Ramachandran
Student, NYU School of Law

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii

STATEMENT REGARDING ORAL ARGUMENT...............................................iv

INTRODUCTION ..............................................................................................1

JURISDICTIONAL STATEMENT ....................................................................3

STATEMENT OF THE ISSUES........................................................................3

STATEMENT OF THE CASE............................................................................3

STANDARD OF REVIEW ................................................................................7

SUMMARY OF ARGUMENT ..........................................................................8

ARGUMENT......................................................................................................9

    I.    Mr. Thomas alleged that Defendants failed to reasonably accommodate his disability in violation of the ADA    9

    II.    Mr. Thomas stated a plausible failure to accommodate claim   13

CONCLUSION ...............................................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**

*Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901 (6th Cir. 2004) .......... 10

*Alexander v. Choate*, 469 U.S. 287 (1985) ................................................................... 10

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 805 F.3d 701 (6th Cir. 2015) .................................................................................................................... 7

*Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984) ......................................................... 19

*Boswell v. Mayer*, 169 F.3d 384 (6th Cir. 1999) .............................................................. 7

*Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428 (6th Cir. 2012) ....................................... 7

*Celeste v. E. Meadow Union Free Sch. Dist.*, 373 Fed. App'x 85 (2d Cir. 2010) ......... 20

*Disabled in Action v. Board of Elections in City of New York*, 752 F.3d 189 (2d Cir. 2014) ............................................................................................................................. 19

*Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240 (6th Cir. Aug. 3, 2022) ............... 23

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........................................................................ 7

*Finley v. Huss*, 102 F.4th 789 (6th Cir. 2024) ........................................................... 3, 11

*Franklin v. Rose*, 765 F.2d 82 (6th Cir. 1985) ................................................................ 8

*Hamer v. Jones*, 364 F. App'x 119 (5th Cir. 2010) ........................................................ 8

*Harnage v. Lightner*, 916 F.3d 138 (2d Cir. 2019) .......................................................... 8

*Harris v. H & W Contracting Co.*, 102 F.3d 516 (11th Cir. 1996) ................................. 15

*Harrison v. Soave Enters. L.L.C.*, 826 F. App'x 517 (6th Cir. 2020) ............................. 16

*Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667 (7th Cir. 2012) ............................................. 22

*Johnson v. City of Saline*, 151 F.3d 564 (6th Cir. 1998) ............................................... 18

*Keller v. Chippewa Cnty., Michigan Bd. of Commissioners*, 860 F. App'x 381 (6th Cir. 2021) ...................................................................................................................... 11, 19, 21

*Knox Cnty., Tennessee v. M.Q.*, 62 F.4th 978 (6th Cir. 2023) ....................................... 11

*Love v. Westville Corr. Ctr.*, 103 F.3d 558 (7th Cir. 1996) ........................................... 21

*Madej v. Maiden*, 951 F.3d 364 (6th Cir. 2020) ........................................................... 23

*McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453 (6th Cir. 1997) ..... 12

*Mingus v. Butler*, 591 F.3d 474 (6th Cir. 2010) ........................................................... 22

*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)................................. 10, 18

*PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) ............................................. 9

*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2012) ................................. 18, 21

*Stansell v. Grafton Corr. Inst.*, No. 18-4009, 2019 WL 5305499 (6th Cir. Aug. 16, 2019) ........................................................................................................ 18, 20

*Turner v. Michigan Dep't of Corr.*, No. 22-1562, 2023 WL 2755655 (6th Cir. Apr. 3, 2023) ........................................................................................................ 16

*United States v. Georgia*, 546 U.S. 151 (2006) ......................................................... 11, 18

*Verhoff v. Time Warner Cable, Inc.*, 299 F. App'x 488 (6th Cir. 2008)......................... 16

**Statutes**

28 U.S.C. § 1291 .......................................................................................................... 3

28 U.S.C. § 1331 .......................................................................................................... 3

42 U.S.C. § 12101 ........................................................................................................ 3

42 U.S.C. § 12102 ........................................................................................................ 14, 16

42 U.S.C. § 12132........................................................................................................ 10

**Other Authorities**

28 C.F.R. § 35.108........................................................................................................ 17

28 C.F.R. § 35.150........................................................................................................ 21

28 C.F.R. §§ 35.130(b)(7), 35.150(a)(3)....................................................................... 12

29 C.F.R. § 1630.2........................................................................................................ 14, 15, 16

iii

## STATEMENT REGARDING ORAL ARGUMENT

Defendants' counsel has not yet appeared in this case because the district court dismissed Mr. Thomas's complaint in a pre-service screening order. Additionally, the district court's error is plain. Mr. Thomas therefore believes that oral argument is unnecessary. If, however, this Court believes that oral argument is necessary to support any of the legal bases for reversal, Mr. Thomas's counsel would be happy to provide oral argument.

**INTRODUCTION**

Ronnie Thomas is currently incarcerated in the custody of the Michigan Department of Corrections (MDOC). Mr. Thomas has experienced substantial pain, difficulty swallowing, difficulty breathing during sleep, and the risk of suffocation while asleep because of a massive goiter protruding from the side of his neck. For two years, he required continued medical attention as the goiter continued to grow. His disability-related symptoms and pain interfered with his ability to sleep in his prison housing unit and to swallow. In 2024, he consulted with a throat specialist and surgeon who determined a thyroidectomy was necessary given his pain and the risk of his windpipe constricting during sleep. While awaiting surgery, the doctor determined that a disability accommodation for two pillows was reasonably necessary in the interim. The two pillows would enable Mr. Thomas to sleep safely without the risk of suffocation, elevating his head and neck and decreasing the pressure on his windpipe from the weight of the goiter.

Soon after, Mr. Thomas was attacked in his housing unit and transferred to temporary segregation for his own protection. The bed in his cell did not contain any pillows or headrest. Mr. Thomas repeatedly informed Defendants of his need for an accommodation, and he showed them his goiter. Defendants refused to accommodate Mr. Thomas's disability and instead mocked him or ignored him. Mr. Thomas was denied the pillows for twenty-five days.

1

Mr. Thomas filed suit *pro se* against the individual officers who had denied him a disability accommodation. He alleged violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, a broad remedial statute that ensures equal opportunity for people with disabilities to access government programs, benefits, and services.

Mr. Thomas pled allegations that he suffered from a goiter, which interfered with swallowing and sleeping, major life activities. He claimed the temporary segregation unit's cell did not provide any pillows or headrests, despite his medical accommodation. A liberal construction of the complaint is that Mr. Thomas was deprived of meaningful access to a safe, appropriate place to sleep without pillows to ameliorate his disability-related symptoms. Mr. Thomas alleged that two pillows were a disability accommodation he required, but that Defendants deliberately refused to provide the pillows or otherwise accommodate him. Mr. Thomas alleged that Defendants knew about his goiter, observed the goiter themselves, heard his requests for an accommodation, and received grievances over the failure to provide his accommodation.

The district court nonetheless dismissed his complaint at the pre-service screening stage for failure to state a claim. The district court did not conduct any meaningful analysis. The court failed to read Mr. Thomas's complaint liberally and interpret his well-pleaded factual allegations as a failure to accommodate claim. *See*

2

*Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024). This Court should reverse.

## JURISDICTIONAL STATEMENT

Thomas appeals the district court's entry of judgment to Defendants on April 14, 2025, which rendered final its concomitant dismissal of Thomas's *pro se* complaint on pre-service screening. Judg., ECF No. 11, Page ID # 71. The district court had jurisdiction under 28 U.S.C. § 1331 as Thomas brought claims under the Americans with Disabilities Act, 42 U.S.C. § 12101. Thomas filed a timely notice of appeal on April 30, 2025, which the district court docketed on May 5, 2025. ECF No. 13, Page ID # 73; see Fed. R. App. P. 4(a). This Court has jurisdiction over the appeal of the district court's final judgment under 28 U.S.C. § 1291.

## ISSUES PRESENTED

I.  Whether Mr. Thomas alleged that Defendants failed to reasonable accommodate his disability in violation of the ADA.

II. Whether Mr. Thomas stated a plausible failure to accommodate claim under the ADA.

## STATEMENT OF THE CASE

Ronnie Thomas is incarcerated at Bellamy Creek Correctional Facility, run by MDOC. Compl., ECF No. 1, Page ID # 9. In 2022, Mr. Thomas had two dominant nodules on his thyroid, the rightmost of which formed a prominent mass of tissue protruding from the side of his neck. *Id.*, Page ID # 6–7. The goiter caused Mr. Thomas substantial pain when swallowing and created pressure when he laid down

3

on his back, making it difficult for him to breathe during sleep. *Id*. Over the next two years, Mr. Thomas's health problems caused by the massive goiter persisted, requiring continued medical attention. *Id*., Page ID # 7.

In 2024, medical providers performed an ultrasound and found the goiter had grown by three centimeters. *Id*. They determined that he needed specialized care. *Id*. On May 28, 2024, Mr. Thomas consulted with a throat specialist and surgeon, who found the goiter serious enough to warrant a thyroidectomy. *Id*. The thyroidectomy was scheduled for September 10, 2024. *Id*. Surgery was necessary given the sheer size and location of the goiter, the degree of pain Mr. Thomas experienced when swallowing, and the substantial risk of his windpipe constricting during sleep and suffocating him. *Id*.

In the interim, Dr. Matthew Wideman prescribed Tylenol for Mr. Thomas's pain and issued an accommodation for two state-issued pillows on August 7, 2024. *Id*. The pillows would elevate Mr. Thomas's head/neck area, decrease the pressure on his windpipe from the weight of the goiter when Mr. Thomas slept on his left side or back, and mitigate the risk of suffocation during sleep. *Id*.

On September 3, 2024, other prisoners in his housing unit attacked Mr. Thomas. *Id*. Instead of placing him in protective custody after the assault, prison staff transferred him to Unit 1 segregation because of limited bedspace in the protective custody unit. *Id*., Page ID # 7-8. Mr. Thomas informed the officers

transporting him to Unit 1 that he had an accommodation for two pillows. *Id.*, Page ID # 8. He provided them with a copy of the accommodation so they could place it on the "main desk." *Id.* MDOC policy required officers to place medical accommodation paperwork on the unit officer's main desk, to give officers in the unit due notice that an incarcerated person housed there had a medical accommodation. *Id.*

On September 4, 2024, in Unit 1, Mr. Thomas informed Defendant Officer Piggett of his accommodation, complained that his cell did not have a pillow, and showed Piggett the nodular goiter bulging from the side of his neck. *Id.*, Page ID # 8-9. Instead of reviewing the medical detail or inquiring further, Piggett mocked Thomas's medical condition and laughed. *Id.*, Page ID # 9. Piggett continued rounds without providing Thomas pillows. *Id.*

Later that day, Mr. Thomas made an oral grievance to Defendant Lieutenant Ramirez. *Id.* Mr. Thomas informed Ramirez of his accommodation and Piggett's conduct. *Id.* Thomas showed him the goiter bulging from his neck. *Id.*, Page ID # 8. Ramirez acted concerned but stated there were no pillows in the unit, and that prisoners who did have a pillow had an accommodation. *Id.*, Page ID # 9. Ramirez did not provide Mr. Thomas pillows and continued his rounds. *Id.*

Discouraged by the prison officials' attitude towards his accommodation, Mr. Thomas was forced to create an insufficient, makeshift headrest out of a cover, sheet,

5

and towel. *Id.*, Page ID #9-10. On September 13, 2024, Mr. Thomas informed Defendant Officer Silvernail of his medical accommodation and lodged an oral grievance. *Id.*, Page ID # 10. Mr. Thomas showed Silvernail the goiter bulging from his neck. *Id.*, Page ID # 8. Silvernail laughed and ignored Mr. Thomas's request for an accommodation. *Id.*, Page ID # 10.

At some point between September 14 and 16, 2024, Mr. Thomas informed Defendant Officer Jensen of his accommodation and lodged an oral grievance that he had been in Unit 1 for approximately 10 days without pillows, and officers had been deliberately indifferent to his medical accommodation. *Id.* Mr. Thomas showed Jensen the goiter bulging from his neck. *Id.*, Page ID # 8. Jensen retorted, "If my brethren officers don't give a damn about your two-pillow medical detail, then I really could care less." *Id.*, Page ID # 10. Jensen did not provide Mr. Thomas with pillows and continued his rounds. *Id.* Defendants ignored Mr. Thomas's accommodation and deprived him of physician-ordered pillows for 25 days.

On January 2, 2025, Mr. Thomas filed suit *pro se* against Defendants Piggett, Ramirez, Silvernail, and Jensen under in the United States District Court for the Western District of Michigan after exhausting his administrative remedies. *Id.*, Page ID # 1-2, 4, 11. He argued that Defendants violated, *inter alia*, the Americans with Disabilities Act. *Id.*, Page ID # 11.

On April 14, 2025, the district court dismissed Mr. Thomas's complaint at the

6

pre-service screening stage. Opinion and Order, ECF No. 9, Page ID # 69. The court held that Mr. Thomas failed to state a claim pursuant to 28 U.S.C. § 1915(g), and it did not grant Mr. Thomas leave to amend. *Id.*, Page ID # 53. The district court contended that Mr. Thomas failed to allege any facts whatsoever indicating he was disabled under the ADA, discriminated against, or excluded from any benefit because of disability. *Id.*, Page ID # 65. Mr. Thomas timely filed his notice of appeal on May 6, 2025. ECF No. 13, Page ID # 73.

## STANDARD OF REVIEW

This Court reviews the district court's dismissal for failure to state a claim de novo, construing the complaint in the light most favorable to the plaintiff, accepting his well-pleaded factual allegations as true, and drawing all reasonable inferences in his favor. *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 805 F.3d 701 (6th Cir. 2015). To survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428 (6th Cir. 2012). A complaint filed *pro se* must be liberally construed, and, even if inartfully pleaded, held to a less stringent standard than counseled cases. *Erickson v. Pardus*, 551 U.S. 89 (2007); *see also Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("sympathetic reading" and liberal construction of *pro se* filings may require active interpretation and uncovering legal claims); *Franklin v. Rose*, 765 F.2d 82, 85 (6th

7

Cir. 1985) (vague and conclusory allegations by *pro se* petitioner are entitled to liberal construction and active interpretation to encompass any allegation stating federal relief). Courts "must reverse a district court's dismissal pursuant to § 1915A whenever a liberal reading of the complaint gives any indication that a valid claim might be stated." *See Harnage v. Lightner*, 916 F.3d 138, 140 (2d Cir. 2019). This is an "extremely low threshold." *Hamer v. Jones*, 364 F. App'x 119, 125 (5th Cir. 2010).

## SUMMARY OF ARGUMENT

The Court should reverse the dismissal of Mr. Thomas's complaint on his ADA claim. The district court erred in not construing his ADA claim as a failure to accommodate claim, for which Mr. Thomas pled sufficient facts. Mr. Thomas alleged his goiter interfered with his sleep and swallowing, which are major life activities. He also qualifies as having a disability under the ADA due to his record of impairment while in prison. Mr. Thomas further alleged that he required the accommodation of two pillows for him to be able to sleep without pain, trouble breathing, and the risk of suffocation, yet his cell contained none. The provision of sleeping quarters and a safe, appropriate place to sleep is a program, service, or activity within the meaning of the ADA. Defendants refused to provide pillows or any accommodation whatsoever to enable meaningful access for Mr. Thomas. Drawing reasonable inferences in Mr. Thomas's favor and affording him liberal

construction, his complaint stated a claim for a violation of Title II of the ADA. This Court should reverse and remand for service and further proceedings.

## ARGUMENT

### I.   Mr. Thomas alleged that Defendants failed to reasonably accommodate his disability in violation of the ADA.

The district court erroneously concluded that Mr. Thomas did not provide allegations to indicate that he was subject to discrimination or otherwise excluded from any benefit because of his disability. But Mr. Thomas's complaint—liberally constructed and drawing reasonable inferences in his favor—alleges facts supporting a failure to accommodate claim, a cognizable theory under the ADA.

#### a. The ADA provides broad protections for incarcerated people with disabilities.

Congress enacted the ADA to "remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001). Congress found that discrimination against individuals with disabilities was a "serious and pervasive social problem," particularly in public accommodations, institutionalization, and health services. *Id*. at 675 (quoting 42 U.S.C. § 12101(a)(2)). Congress enacted a "broad mandate" with a "sweeping purpose." *Id.* at 675. To effectuate that sweeping purpose, the ADA "forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id.* (footnotes

9

omitted).

This case concerns Title II, which prohibits public entities from (1) excluding from participation or denying the benefits of any services, programs, or activities of the entity, any qualified person with a disability, or (2) discriminating against that person. 42 U.S.C. § 12132. Congress understood that disability discrimination was "most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985). Therefore, Title II prohibits public entities from denying, even unintentionally, qualified disabled individuals meaningful access to the services or benefits they provide. *Id*. It requires that public entities make reasonable accommodations for disabled individuals so as not to deprive them of meaningful access to the benefits of their services. *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004).

The ADA's definition of public entities "unmistakably includes State prisons and prisoners within its coverage." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998). Indeed, state prisons "fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id.* at 210 (quoting 42 U.S.C. § 12131(1)(B)).

To prevail under the ADA, a plaintiff must establish that he (1) has a

qualifying disability, (2) is otherwise qualified for a program or service, and (3) was either denied meaningful access to or the benefits of a service or was subjected to discrimination because of his disability. *Finley*, 102 F.4th at 820. The third prong gives rise to two separate theories: intentional discrimination and the failure to reasonably accommodate. *Knox Cnty., Tennessee v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023).

  b.  A plaintiff makes out a claim under the ADA if the defendant fails to reasonably accommodate his disability.

To prevail on a failure to accommodate claim, a plaintiff must show that the defendant reasonably could have accommodated his disability but failed to do so. *Keller v. Chippewa Cnty., Michigan Bd. of Commissioners*, 860 F. App'x 381, 385 (6th Cir. 2021). The plaintiff must also prove that the failure to accommodate impeded his ability to participate in or benefit from a program or service. *Id*. Because failing to grant a reasonable accommodation is itself direct evidence of discrimination, plaintiffs who meet this burden need not provide additional evidence of discriminatory intent. *Finley*, 102 F.4th at 789, 820. As the Court explained in *United States v. Georgia*: "[T]he alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs" violates Title II of the ADA. 546 U.S. 151, 157 (2006). So assuming that the plaintiff satisfies the first two prongs of the test, a plaintiff who demonstrates that the defendants failed to reasonably accommodate his

11

disability has made out a claim under the ADA.

The ADA requires covered entities, like prisons, to make "reasonable modifications in policies, practices, or procedures" when such modifications are "necessary to avoid discrimination on the basis of disability." *Finley*, 102 F.4th at 821. The question of whether an accommodation is reasonable is a question "specific to each case." *Id*. In general, under the ADA, an accommodation is unreasonable if it would impose "undue financial and administrative burdens" or "fundamentally alter the nature" of their services or programs. 28 C.F.R. §§ 35.130(b)(7), 35.150(a)(3); *see also McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 459–60, 463 (6th Cir. 1997).

      c.   The district court should have construed Mr. Thomas's ADA claim as a failure to accommodate claim.

In dismissing the complaint, the district court made a conclusory statement that Mr. Thomas did not provide the Court with allegations indicating discrimination. Opinion and Order, ECF No. 9, Page ID # 65. But this only makes sense if the district court considered only an intentional discrimination claim, as—drawing reasonable inferences and construing the allegations liberally—Mr. Thomas plainly alleged facts supporting a failure to accommodate claim. Mr. Thomas claimed that, to sleep without risking suffocation, he needed and was prescribed a medical accommodation for two state-issued pillows to elevate his head/neck area and decrease the pressure on his windpipe. Compl., ECF No. 1, Page ID # 7. Yet his cell and room in Unit 1 were

12

devoid of any pillow. *Id.*, Page ID # 9. Further, Defendants were made aware of Mr. Thomas's medical accommodation and "willfully disregarded" it. *Id.*, Page ID # 10. These allegations make out a failure to accommodate claim of discrimination.

## II. Mr. Thomas stated a plausible failure-to-accommodate claim.

Mr. Thomas established that he is a qualified individual with a disability — the massive goiter protruding from his neck, which substantially limits his ability to swallow and sleep, and was documented by prison healthcare providers, providing a record of impairment. As an incarcerated individual in MDOC custody, he was qualified to receive sleeping quarters and a safe place to sleep. He was denied meaningful access and an opportunity to benefit from the provision of sleeping quarters because his goiter, without accommodation, prevented him from sleeping safely without risking suffocation. Mr. Thomas requested a reasonable accommodation of two pillows to be able to sleep safely in his sleeping quarters, but Defendants refused to accommodate him.

### a. Mr. Thomas is a qualifying individual with a disability.

Mr. Thomas alleged facts sufficient to show that he is a qualified individual with a disability. His goiter is a physical impairment substantially limiting the major life activities of sleeping and swallowing. He also has a record of impairment based on past medical treatment and assessment for his goiter by prison healthcare providers.

> i. "Disability" is broadly defined in the ADA and must be interpreted in favor of broad coverage.

13

In the ADA, the term "disability" is defined as: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2). The ADA Amendments Act of 2008 requires courts to interpret the term disability "in favor of broad coverage." 42 U.S.C. § 12102(4)(A). Whether a disability may be episodic in nature, or occur infrequently, is not relevant to determining whether it substantially limits a major life activity. *Id.* at § 12102(4)(D).

A physical impairment is any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems. 29 C.F.R. § 1630.2(h)(1). The "degree of functional limitation required for an impairment to constitute a disability" does not "create a demanding standard." 29 C.F.R. § 1630.2(j)(1)(iv). Major life activities include, but are not limited to, eating, sleeping, caring for oneself, speaking, breathing, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A). To determine whether a disability substantially limits major life activities, courts should compare the person claiming a disability to "most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). An impairment need not prevent, or significantly or severely restrict, a major life activity to be substantially limiting. *Id*. The term "substantially limits" must be construed broadly in favor of expansive coverage and is not meant to be a demanding standard. 29 C.F.R.

14

§ 1630.2(j)(1)(i).

      ii.  Mr. Thomas's goiter qualifies as a disability under the ADA as a physical impairment substantially limiting swallowing and sleeping.

Mr. Thomas has a physical impairment. The goiter, or a prominent mass of tissue protruding from the side of his neck, was formed by the rightmost of two dominant nodules on his thyroid. Compl., ECF No. 1, Page ID # 6-7. The goiter caused substantial pain when swallowing and applied pressure to Mr. Thomas's windpipe during sleep, making breathing difficult and creating a risk of suffocation if his windpipe were to constrict. *Id.* "It is common knowledge that the thyroid gland is an integral part of the endocrine system, as can be verified by turning to an ordinary dictionary." *Harris v. H & W Contracting Co.*, 102 F.3d 516, 520 (11th Cir. 1996) (holding that a "thyroid problem" qualified as a disability even under the less demanding standard pre-ADAAA). Mr. Thomas clearly satisfied the capacious standard of the ADAAA. The goiter is both a cosmetic disfigurement protruding from Mr. Thomas's neck and a physiological condition involving the enlargement of a massive nodule on his thyroid gland.

The goiter substantially limited the major life activities of sleeping and swallowing. Swallowing causes Mr. Thomas "substantial pain," the degree of which was significant enough to warrant a thyroidectomy. *Id.*, Page ID # 6-7. Swallowing is a major life activity and is also imperative to eating, textually defined as a major life

15

activity. 42 U.S.C. § 12102(2)(A). Substantial pain, warranting surgery, is sufficient to amount to a substantial limitation. *See* 28 C.F.R. Pt. 35, App. C ("[A]n individual whose impairment causes pain or fatigue that most people would not experience when performing that major life activity may be substantially limited."). Sleep is also a major life activity. *Id.*; *Verhoff v. Time Warner Cable, Inc.*, 299 F. App'x 488, 492 (6th Cir. 2008). Mr. Thomas experiences difficulty breathing and a substantial risk of suffocating during sleep, restricting his ability to sleep safely without elevation. Compl., ECF No. 1, Page ID # 6-7. The general population does not risk their windpipe constricting, leading to suffocation and death during sleep. *See* 29 C.F.R. § 1630.2 (the way an impairment affects the operation of a major bodily function is a relevant consideration).

This Court has routinely recognized that pleading a physical limitation coupled with allegations that said limitation affects major life activities is sufficient to allege disability. *See e.g.*, *Harrison v. Soave Enters. L.L.C.*, 826 F. App'x 517, 524 (6th Cir. 2020) (physical injury and evidence that plaintiff cannot kneel qualifies as a disability). The district court "provided no analysis" as to why Mr. Thomas's *pro se* allegations did not fit within the definition of disability in the ADA. *Turner v. Michigan Dep't of Corr.*, No. 22-1562, 2023 WL 2755655, at *4 (6th Cir. Apr. 3, 2023) (holding in analogous circumstances that "this error alone requires us to vacate its decision"). *Pro se* complaints are owed reasonable inferences and liberal

16

construction of the allegations—such as recognizing Mr. Thomas's goiter as a disability and sleeping and swallowing as major life activities—which the district court failed to do.

### iii.  Mr. Thomas has a disability based on his record of impairment.

An individual is considered to have a record of their disability when the individual has "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 28 C.F.R. § 35.108(e)(1). An individual's substantially limiting impairment need not have lasted longer than six months or be ongoing in order to be considered disabled by having a record of a substantially limiting impairment. 28 C.F.R. § 35.108(d)(vii).

Mr. Thomas has received ongoing care and monitoring since 2022. Compl., ECF No. 1, Page ID # 6. An ultrasound was ordered in 2022 due to the prominent mass of tissue protruding from the right side of Mr. Thomas's neck, causing him substantial pain when swallowing and pressure while lying on his back, making breathing difficult. *Id.*, Page ID # 6-7. Health issues persisted for two years as the goiter grew in size. *Id.*, Page ID # 7. A throat specialist further consulted with Mr. Thomas and approved a thyroidectomy as well as interim accommodations and pain medication. *Id*. These facts clearly demonstrate a record of impairment by MDOC healthcare providers.

### b. As an incarcerated individual in MDOC custody, Mr. Thomas was otherwise qualified for the program or service of a safe place to sleep.

17

i. A safe place to sleep, or the provision of sleeping quarters, is a service, program, or activity within the meaning of the ADA.

The phrase "service, program, or activity" under Title II encompasses virtually everything that a public entity does. *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998). A service, program, or activity in prison includes "many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." *Yeskey*, 524 U.S. at 210. Because the state manages all aspects of life in prison, basic functions like "mobility, hygiene, medical care, and virtually all other prison programs" are "services, programs, or activities" under the ADA. *United States v. Georgia*, 546 U.S. 151, 157 (2006). The Supreme Court has suggested that the phrase can include shower and bathroom services in a prison. *Georgia*, 546 U.S. at 157; *Stansell v. Grafton Corr. Inst.*, No. 18-4009, 2019 WL 5305499, at *1 (6th Cir. Aug. 16, 2019). Courts have held that the provision of a safe place to sleep is a service. *See, e.g., Pierce v. County of Orange*, 526 F.3d 1190, 1224 n.44 (9th Cir. 2012) (affirming that the provision of "appropriate and adequate bedding" was a service of the jail).

A safe place to sleep, or the provision of sleeping quarters, is a service, program, or activity. MDOC controls all aspects of daily life for Mr. Thomas, including the provision of facilities for sleeping. The prison provides Mr. Thomas with access to a cell in a housing unit dormitory for him to sleep in, including a bed

18

and other necessities. Sleeping quarters are a service, for which meaningful access for people with disabilities is required. *See Keller*, 860 F. App'x at 381, 386 ("the denial of meaningful access to medical care, bathroom facilities, or meals could support the required prima facie showing").

> ii. Mr. Thomas was otherwise qualified to be provided with sleeping quarters.

Mr. Thomas was qualified for the program or service of the provision of a safe place to sleep, which he could not meaningfully access absent a reasonable accommodation. Incarcerated people rely on and are entitled to the provision of basic human needs by prisons, including shelter. *Bellamy v. Bradley*, 729 F.2d 416, 419 (6th Cir. 1984). MDOC provides incarcerated people with sleeping quarters. As an incarcerated person in MDOC custody, Mr. Thomas was qualified to receive meaningful access to and opportunity to benefit from a safe place to sleep in Unit 1.

> c. Mr. Thomas's disability limited and compromised his access to a safe place to sleep, requiring accommodation.

A plaintiff is excluded from the services of a public entity when they are denied "meaningful access" to the programs. *Keller*, 860 Fed. App'x at 386. Notably, a plaintiff who succeeds in accessing a prison service, program, or activity still has a valid ADA claim if their access to the service, program, or activity was made "only through an excessive or painful effort." *Id.* at 381, 387; *Disabled in Action v. Board of Elections in City of New York*, 752 F.3d 189, 200 (2d Cir. 2014).

19

In *Stansell v. Grafton Correctional Institution*, the plaintiff successfully brought a claim that switching to shorter tables in the visitation room violated the ADA. 2019 WL 5305499, at \*1. While the plaintiff could technically still use the tables, the shorter tables caused him "severe pain and discomfort" given his difficulties in bending over. *Id.* (holding that the defendant "forced him to either forgo visitation or participate and experience unnecessary pain and suffering"). Even though the plaintiff still had the ability to access services, this was not meaningful access. *Id.*; *see also Celeste v. E. Meadow Union Free Sch. Dist.*, 373 Fed. App'x 85, 88 (2d Cir. 2010) (holding that a mobility-impaired student did not have meaningful access to facilities when "forced to take a ten-minute detour").

As a result of his disability, Mr. Thomas was unable to meaningfully access or benefit from the prison's provision of a safe place to sleep without a headrest. He has trouble breathing while asleep, and the weight of the goiter poses a substantial risk of constricting his windpipe and suffocating him. Compl., ECF No. 1, Page ID # 7. The pain swallowing and the risk of suffocation were so serious as to warrant a recommended thyroidectomy and medical accommodations in the interim. *Id.* Without the pillows to elevate his head and neck and decrease pressure on his windpipe, Mr. Thomas's windpipe could constrict and suffocate him. *Id.* Unit 1 officers denied Mr. Thomas pillows and derided him, forcing him to create an insufficient, makeshift headrest and "languish" for weeks. *Id.*, Page ID # 9. Mr.

20

Thomas's inability to sleep safely in his sleeping quarters without a headrest is a sufficient allegation to demonstrate a lack of meaningful access to a service, program, or activity. See *Keller*, 860 F. App'x at 387.

      d. Defendants failed to reasonably accommodate Mr. Thomas's disability and therefore discriminated against him by reason of disability.

Mr. Thomas's proposed accommodation of two pillows was indisputably reasonable, particularly in relation to the risk of harm of suffocation. Honoring a physician-ordered accommodation for two pillows would not have been unreasonable for the Defendants, who instead took no action to accommodate Mr. Thomas.

      i. Providing Mr. Thomas with two pillows was a reasonable accommodation.

Reasonable accommodations are those that do not result in a "fundamental alteration in the nature of a service, program, or activity." 28 C.F.R. § 35.150(a)(3). Accommodations in prisons are generally considered reasonable so long as they do not result in additional costs or safety concerns. *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1220 (9th Cir. 2008); *see also Love v. Westville Corr. Ctr.*,103 F.3d 558 (7th Cir. 1996). Although plaintiffs are not entitled to their "preferred" accommodation, a reasonable accommodation must still provide plaintiffs with meaningful access to the entity's program or services. *Finley*, 102 F.4th at 789, 821.

Providing Mr. Thomas with two pillows, ordered by a prison healthcare provider, would not fundamentally change the service of sleeping quarters, add

21

additional or undue costs, or pose a safety concern. Pillows were already provided to other incarcerated individuals with accommodations in Unit 1. Compl., ECF No. 1, Page ID # 9.

> ii. Defendants were aware of Mr. Thomas's disability but refused to provide him with pillows.

Refusing to make reasonable accommodations is tantamount to denying access. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Mr. Thomas's complaint gives extensive detail as to his interactions with each Defendant, where he showed them the goiter bulging from his neck, informed them that he was granted a medical accommodation, informed them he had previously been denied the pillows, and requested two pillows. Compl., ECF No. 1, Page ID # 8-10. Defendants refused to provide Mr. Thomas with pillows, with Officer Piggett and Officer Jensen making cruel remarks as well. *Id*. Defendants failed to provide Mr. Thomas with two pillows when, according to Lieutenant Ramirez, other disabled prisoners received pillows. *See Mingus v. Butler*, 591 F.3d 474, 483 (6th Cir. 2010) (allegation that prisoner was denied a single-occupancy room that other non-disabled and differently disabled people were given stated an ADA claim). Defendants refused to provide the pillows and did not undertake any other action to accommodate Mr. Thomas's goiter, nor did they inquire further or investigate his accommodation. The bare refusal to respond to Mr. Thomas's visible disability, repeated requests, and documented physician-ordered accommodation is a failure to

22

reasonably accommodate.

     e. Mr. Thomas was discriminated against by reason of disability, as Defendants' failure to reasonably accommodate his disability led to the denial of a safe place to sleep.

The demonstration that an individual was discriminated against "by reason of disability" serves as a causation requirement, which can be satisfied by showing "that the proposed modification is needed to avoid the denial of services or benefits." *Madej v. Maiden*, 951 F.3d 364, 373 (6th Cir. 2020). It is sufficient for the plaintiff to show that harm could have been avoided if the government had provided some reasonable accommodation. *See Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240, at *6 (6th Cir. Aug. 3, 2022) (citing *Wilson v. Gregory*, 3 F.4th 844, 859 (6th Cir. 2021)).

Mr. Thomas has satisfied causation by alleging sufficient facts showing he was denied meaningful access to a safe, appropriate place to sleep and denied a reasonable accommodation to enable his access. But for the denial of a reasonable accommodation, Mr. Thomas would have been able to safely sleep, meaningfully accessing and benefiting from the provision of sleeping quarters. *Finley*, 102 F.4th at 823.

## CONCLUSION

This Court should reverse the district court's dismissal of Mr. Thomas's complaint for failure to state a claim and remand to the district court for service and further proceedings.

Date:  August 27, 2025

*/s/ Samuel Weiss*
Samuel Weiss
Rights Behind Bars
1800 M St. NW Front 1, #33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*
*Ronnie Thomas*

24

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,561 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.


Date:  August 27, 2025

<div style="text-align: right">

*/s/ Samuel Weiss*
Samuel Weiss
Rights Behind Bars
1800 M St. NW Front 1, #33821
Washington, DC 20033

*Counsel for Plaintiff-Appellant*
*Ronnie Thomas*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the ECF/ACMS system.

Participants in the case who are registered CM/ECF users will be served by the ECF/ACMS system.

Date:  August 27, 2025.

<div style="margin-left:50%">

*/s/ Samuel Weiss*
Samuel Weiss
Rights Behind Bars
1800 M St. NW Front 1, #33821
Washington, DC 20033

*Counsel for Plaintiff-Appellant*
*Ronnie Thomas*

</div>

**ADDENDUM**

**Appellant's Designation of Relevant District Court Documents**

U.S. District Court for the Western District of Michigan, Case No. 1:25-cv-20

| Record Entry | Description of Document | Page ID# |
|:---:|:---:|:---:|
| 1 | Complaint | 1–14 |
| 9 | Screening Opinion | 53–69 |
| 11 | Judgment | 71 |
| 13 | Notice of Appeal | 73–75 |